# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NORTH AVENUE FRESH MARKET, LLC, | ) | Case No. 11-52032 |
| | ) | |
| Debtor. | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing: January 5, 2012 - 11:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **January 5, 2012 at 11:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Susan Pierson Sonderby (sitting as the emergency judge in the place of the Honorable Carol A. Doyle, to whom this case is assigned) in the courtroom usually occupied by her, Courtroom No. 742, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in her place or stead, and shall then and there present the **Motion For An Order (I) Authorizing Use Of Cash Collateral And Granting Adequate Protection And (II) Approving The Form And Method Of Notice Of, And Scheduling, The Final Hearing On The Use Of Cash Collateral**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: January 3, 2012                    **MICHAEL'S MARKET, INC. AND ITS AFFILIATED DEBTORS**

                                          By: /s/ Forrest B. Lammiman
                                              One of Their Proposed Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{33599: 002: 00840698.DOC :3 }

# CERTIFICATE OF SERVICE

I, Forrest B. Lammiman, an attorney, certify that on January 3, 2012, I caused copies of the **Notice of Motion** and **Motion For An Order (I) Authorizing Use Of Cash Collateral And Granting Adequate Protection And (II) Approving The Form And Method Of Notice Of, And Scheduling, The Final Hearing On The Use Of Cash Collateral**, to be served (i) via electronic notice on the parties appearing on the Court's CM/ECF notice list and (ii) upon the parties as set forth on the Service List below.

By:  /s/ Forrest B. Lammiman

## SERVICE LIST

**Via Federal Express**

Premier Bank
1210 Central Avenue
Wilmette, IL 60091

**Via Messenger and Email**

Alexander R. Domanskis            domanskis@boodlaw.com
Boodell & Domanskis, LLC
205 N. Michigan Avenue, Suite 4307
Chicago, IL 60601

**Via Email**

| | |
|---|---|
| Anthony Marano Company | sqlmaster@marano.com |
| Four Star Foods | kaite@fourstarfoods.com |
| Dearborn Wholesale Grocers | sstucko@dearbornwholesale.com |
| UW Provision Company | patti.key@uwprovision.com; colleen.hansen@uwprovision.com |
| Strube Celery & Vegetable | bfotopoulos@strube.com |
| Valassis Direct Mail | jdavis@rmccash.com |

**Via Facsimile**

| | |
|---|---|
| Nealey Foods | 312-829-9822 |
| Dutch Farms | 773-660-0990 |
| Morris Meat Packing | 708-865-8682 |
| YPV Distribution Company | 847-718-1101 |

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NORTH AVENUE FRESH MARKET, LLC, | ) | Case No. 11-52032 |
| | ) | |
| Debtor. | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing: January 5, 2012 - 11:00 a.m. |

**MOTION FOR AN ORDER (I) AUTHORIZING USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND (II)
APPROVING THE FORM AND METHOD OF NOTICE OF, AND SCHEDULING,
THE FINAL HEARING ON THE USE OF CASH COLLATERAL**

North Avenue Fresh Market, LLC, together with Michael's Market, Inc. ("Michael's") and its affiliated Chapter 11 debtors (collectively, the "Debtors")[1], hereby move (the "Motion")[2] the Court for the following:

(a) That the Court conduct a preliminary hearing to consider the Motion (the "Interim Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

(b) That after the Interim Hearing, the Court enter an interim order, in substantially the form as that attached to this Motion (the "Interim Cash Collateral Order"), authorizing the Debtors, pursuant to sections 363 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as

---

[1] The affiliated Chapter 11 debtors who have contemporaneously filed Chapter 11 petitions in this district are: Michael's Market, Inc., 2820-30 North Cicero, LLC, 4815 W. Wolfram, LLC, CP No. 3, Inc. f/k/a Cermak Produce No. 3, Inc., DMM Produce, Inc., North Avenue Fresh Market, LLC, Mayfair Market Place, Inc., Jenor, LLC, Jenor, LLC – Michael's Fresh Market and Jenor, LLC – Downers Grove.

[2] The Debtors' proposed Interim Cash Collateral Order (as defined hereafter) has been filed contemporaneously herewith. The Final Order (as defined hereafter) will be filed separately. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Cash Collateral Order.

amended, the "Bankruptcy Code") and Rule 4001(b) of the Bankruptcy Rules, *inter alia*, to use the Cash Collateral (as defined hereafter) of the Lender (as defined hereafter) to fund the expenses set forth in the Operating Budgets upon the terms and conditions set forth in the Interim Cash Collateral Order and to grant adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Premier Bank, an Illinois banking corporation (the "Lender") pending a final hearing on this Motion; and

(c)     That the Court schedule a final hearing (the "Final Hearing") to consider entry of a final Cash Collateral order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Lender's Cash Collateral and the grant of adequate protection.

## CASH COLLATERAL SUMMARY

1.     By this Motion, the Debtors seek the entry of the Interim Cash Collateral Order authorizing it to use certain Cash Collateral of the Lender, which generally consists of income from the income producing properties (as defined hereafter). It is critical for the Debtors to use such Cash Collateral to sustain sufficient working capital to finance their ongoing postpetition business operations until they confirm a plan of reorganization.

2.     The Debtors propose to use Cash Collateral on an interim basis for a period of approximately four (4) weeks pursuant to the Operating Budget attached as **Exhibit A** hereto, respectively, and to the Interim Cash Collateral Order (the "Operating Budget"). The Debtors request that the Court schedule a final hearing no earlier than 21 (twenty-one) days following the date the Court enters the Interim Cash Collateral Order. The proposed adequate protection the Debtors expect to provide to the Lender is the continued operation and maintenance of the Debtors' businesses, which will preserve the value of the Lender's collateral. The Debtors are not providing the Lender with any additional liens, nor have the Debtors included any of the

provisions identified in Local Rule 4001(b)(1) through (10) in the Interim Cash Collateral Order.

3.  The Debtors propose that their right to use the Cash Collateral shall expire on the earliest to occur of any of the Termination Events set forth in Paragraph 29. On and after the occurrence of a Termination Event, the Debtors will immediately cease using any of the Cash Collateral; provided, however, that the Debtors reserve the right to seek Court authorization to continue to use such Cash Collateral.

## JURISDICTION

4.  On December 30, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing the above-captioned Chapter 11 cases. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

5.  No creditors' committee has been appointed in these cases.

6.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.  The bases for the relief requested herein are sections 361, 362(d)(3), 363 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

8.  Each of the Debtors is or was a grocery store in the greater Chicago area. Currently, the following Debtors operate active going concern grocery store operations (the "Operating Stores") at the following locations: DMM Produce d/b/a Harvey Fresh Market, in

Harvey, Illinois; Jenor LLC d/b/a Michael's Fresh Market, in Naperville, Illinois; North Avenue Fresh Market, in Oak Park, Illinois; CP No. 3, Inc. d/b/a Cermak Produce, in Chicago, Illinois; Mayfair Marketplace, Inc. d/b/a Mayfair Market, in Chicago, Illinois; and Michael's Market, Inc. d/b/a Michael's Fresh Market, in Chicago, Illinois. In addition, one of the Debtors, namely Jenor LLC d/b/a Michael's Fresh Market in Downer's Grove, Illinois has closed its doors and is no longer operating.

9. Almost all of the Operating Stores are profitable, have significant customer bases, and their businesses may be reorganized if (i) they are afforded sufficient working capital to service their customers' needs and (ii) their plan of reorganization appropriately recasts and reduces their indebtedness in accordance with the Bankruptcy Code. For 2009, 2010 and 2011, the Debtors have averaged more than $50 million in annual revenue for all of the Debtors' locations combined.

10. The financial difficulties experienced by the Debtors are due in large part to the freeze on lending imposed by the Lender beginning in the fall of 2010. Upon information and belief, this freeze on the Lender's extension on working capital to the Debtors was due not to problems with the financial performance of the Debtors, but primarily was caused by the Lender's own financial and regulatory problems. A cease and desist consent order was entered between the Lender, the FDIC and the Illinois Department of Financial and Professional Regulation on September 3, 2010, a copy of which is attached as **Exhibit B** hereto. The Lender has been obligated to operate under the constraints and overhang of this order for over a year. The Lender's financial and regulatory problems apparently have made it impossible for the Lender to provide to the Debtors with sufficient working capital to permit the Debtors to adequately provide their customers with the desired range and depth of inventory.

{33599: 002: 00840698.DOC :3 }

11. The Debtors have certain loan facilities with the Lender, which the Lender has asserted resulted in aggregated indebtedness of over $23 million as of September 2011. The Debtors believe that any such indebtedness is subject to significant defenses, counterclaims, setoff rights and other remedies in favor of the Debtors. Any outstanding obligations were generated pursuant to the following promissory notes in favor of the Lender (collectively, the "Notes"):

    a. by Michael's and Dernis dated December 30, 2010 in the original principal amount of $4,000,000 (as amended, modified or supplemented, the "Michael's Note");

    b. by North Cicero dated August 2, 2006 in the original principal amount of $4,800,000 (as amended, modified or supplemented, the "North Cicero Note");

    c. by Wolfram dated October 30, 2007 in the original principal amount of $584,000 (as amended, modified or supplemented, the "Wolfram Note");

    d. by Cermak dated September 1, 2004 in the original principal amount of $3,535,000 (as amended, modified or supplemented, the "Cermak Note");

    e. by DMM and North Avenue dated December 4, 2008 in the original principal amount of $5,000,000 (as amended, modified or supplemented, the "DMM / North Avenue Note");

    f. by Jenor – Michael's and Downers Grove dated October 20, 2009 in the original principal amount of $4,334,533 (as amended, modified or supplemented, the "Jenor Note");

    g. by Mayfair dated December 4, 2008 in the original principal amount of

$1,400,000 (as amended, modified or supplemented, the "Mayfair Note"); and

h. by George Dernis (a non-Debtor who is the primary owner and manager of the Debtors) dated September 29, 2008 in the original principal amount of $2,900,000 (as amended, modified or supplemented, the "Dernis Note");

The indebtedness of the Debtors under the foregoing Notes as secured by security interests and liens in most of the personal assets of the Debtors, including the Debtors' inventory, proceeds from sales to customers, a certificate of deposit, machinery and equipment and general intangibles and similar rights and assets.

12. As of the Petition Date, the Debtors possess cash in the estimated amount of $150,000 to $250,000, plus additional cash collateral in the form of a $460,000 certificate of deposit pledged to the Lender.

13. For purposes of this Motion only, the Debtors propose to treat all of the purported liens and security interests of the Lender as perfected, first-priority non-avoidable security interests and liens, while also reserving all of the Debtors' rights to challenge the validity, perfection, priority, amount and voidability of those security interests and liens.

14. The Debtors acknowledge that the obligations and the security interests and liens in and against the Prepetition Collateral securing the obligations are evidenced by certain loan, security and other collateral agreements between the Lender and the Debtors, including the Notes and a mortgage on property located at 2820-30 N. Cicero, Chicago, Illinois executed by one of the Debtors in favor of the Lender, and other agreements, documents, guaranties and instruments entered into, delivered or otherwise related to the obligations and the prepetition collateral (collectively, the "Lender Agreements"). Notwithstanding the existence of the Lender Agreements, the Debtors contend that they have significant defenses, counterclaims, setoff rights

and other rights and remedies against the Lender, and that the Lender's claims and security interests and liens may be the subject of an adversary proceeding or a contested matter in these Chapter 11 cases.

15. The Debtors and Lender have thus far been unable to reach an agreement to restructure the debt.

16. Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtors as of the commencement of their bankruptcy cases and the proceeds, products, offspring, rents or profits of the Prepetition Collateral received by the Debtors after the commencement of the case may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and in which the Lender may have an interest within the meaning of sections 363(c)(2) and 363(e) (the "Cash Collateral"). The Debtors propose to adequately protect any interest that the Lender may have in such Cash Collateral, while (as noted above) also reserving all of the Debtors' rights to challenge the purported claims, security interests and liens of the Lender.

**RELIEF REQUESTED**

17. By this Motion, the Debtors seek, among other things:

(a) authorization pursuant to the Interim Cash Collateral Order under Bankruptcy Code sections 361, 362(d)(3)(B), 363(c), and 363(e) of the Bankruptcy Code to use the Cash Collateral and provide adequate protection to the Lender with respect to the Debtor's use of such Cash Collateral and other diminution in value of the Prepetition Collateral; and

(b) the scheduling of the Final Hearing on this Motion and the establishment of notice procedures in respect of the Final Hearing to consider entry of the Final Order approving the use of Cash Collateral and the granting of adequate protection to the Lender on a final basis.

**BASIS FOR RELIEF**

**A.    Use of Cash Collateral**

{33599: 002: 00840698.DOC :3 }

18. The Debtors have determined that the use of the Cash Collateral is necessary for the Debtors to maintain sufficient liquidity so that they may continue to operate their businesses in Chapter 11 in the ordinary course of business and be positioned to prepare, file and confirm plans of reorganization. Without immediate access to the Cash Collateral, the Debtors will not be able to pay the ongoing costs of running its businesses and administering their estates, the result of which will be the irreparable damage to the value of the Debtors and thus the value of the Lender's prepetition collateral. Indeed, the Debtors have determined that if they are not allowed to use Cash Collateral, they will not be able to maintain their businesses during this Chapter 11 case, proceed to confirmation of a plan of reorganization.

19. Access to the Cash Collateral will provide the Debtors' vendors with the requisite security that the Debtors will be able to continue conducting their business in the ordinary course without interruption. The use of Cash Collateral is necessary to run the Debtors' businesses properly and generate additional Cash Collateral during the pendency of the Chapter 11 cases. In order to assure that the Operating Stores are able to continue purchasing grocery inventory from their vendors and thus assure continued generation of sales at the Operating Stores, it is necessary that the Debtors be permitted to use Cash Collateral.

20. Moreover, access to the Cash Collateral will enable the Debtors to further maximize the value of their assets for the Lender, their estates and their creditors.

21. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Additionally, section 363(e) provides that, on request of an entity that has an interest in cash collateral to be used, the court may condition such

use as is necessary to provide adequate protection of such interest.  The Debtors request that the Court approve their use of Cash Collateral to pay insurance premiums, utility invoices, salaries, operating expenses and attorneys' fees incurred during the pendency of these cases, all as provided in the Operating Budget.

22. Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 15-day period following the filing of a motion requesting authorization to use such cash collateral, the court may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending final hearing." Bankruptcy Rule 4001(b)(2).  After the 15-day period, the request for financing is not limited to those amounts necessary to prevent impairment of the Debtors' business.

23. The Debtors' request for interim use of Cash Collateral pursuant to the Interim Cash Collateral Order is necessary to avoid immediate and irreparable harm to the Debtors.  To ensure a smooth transition into Chapter 11 and the maximization of the value of the Debtors' assets, it is imperative that the Debtors be authorized to use Cash Collateral pursuant to section 363 of the Bankruptcy Code to avoid immediate and irreparable harm to the Debtors' estates. Absent the use of Cash Collateral for their continuing business operations, the Debtors will be unable to fund its operating expenses in the ordinary course, thus needlessly jeopardizing their reorganization efforts.  Consequently, if interim relief is not obtained, the Debtors' attempts to reorganize may well be doomed at the outset, to the detriment of the Debtors and their creditors.

24. Moreover, without immediate access to postpetition financing, the Debtors expect to suffer an acute cash shortage in the coming days that threatens its ability to maintain operations in the short term, even through the date of the Final Hearing.  Accordingly, the Debtors request that the Court grant the relief requested herein on an interim basis, subject to

final approval at the Final Hearing.

B. **Adequate Protection**

25. Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors may not use the Cash Collateral without the consent of the Lender or authorization by the Court. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. See 11 U.S.C. § 363(e). The Debtors intend to request the Lenders to consent to use of Cash Collateral pursuant to the Operating Budgets, and hope that agreement with the Lender will be reached.

26. The Debtors believe that it is indisputable that the Lender is massively undersecured pursuant to section 506(a) of the Bankruptcy Code, in that the Lender's collateral is worth significantly less than the more than $23 million in indebtedness asserted by the Lender to be owed by the Debtors.

27. Pursuant to *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988), the interest in property entitled to adequate protection under section 363(e) is equal to the value of the collateral that is subject to the secured creditor's lien. Accordingly, a debtor can provide adequate protection to an undersecured creditor by maintaining the value of the collateral. *See, e.g., In re Addison Properties. Ltd. P'shi p*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) ("it is now established that 'adequate protection' is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property.").

28. As adequate protection for the Lender's interest in the Cash Collateral, the

Debtors propose to use the Cash Collateral to pay all overhead and operating expenses of their businesses (including the Debtors' attorneys' fees), as more specifically described in the Operating Budget and to the proposed Interim Cash Collateral Order. By so doing, the Debtors will be able to maintain the value of the Debtors' businesses — *i.e.*, the Lender's collateral—as a going concern and prevent it from diminishing in value. The Debtors submit that expending the Cash Collateral on the necessary expenses of the Debtors' businesses can only preserve the value of the business and, thus, the Lender's secured interest. Indeed, all expenditures from the Cash Collateral set forth in the Operating Budget are necessary to maintain and preserve the value of the Debtors' businesses, which is the Lender's fundamental collateral.

29. As further adequate protection for purposes of this Motion and the Interim Cash Collateral Order only, the Debtors also propose to offer replacement liens to the Lender pursuant to sections 361(2), 363(c)(2), 363(e) and 552(b)(1) of the Bankruptcy Code in any category of post-petition collateral in which the Lender held a valid, perfected first-priority security interest as of the Petition Date, and in the proceeds of any such prepetition collateral. The Debtors reserve, however, all objections to the claims, liens and security interests of the Lender; this reservation of rights shall include (without limitation) all of the Debtors' rights to challenge the validity, perfection, priority, amount and voidability of any of the Lender's security interests and liens, and all of the Debtors' defenses, counterclaims, setoff rights and other rights and remedies against the Lender and its claims.

30. Under the Interim Cash Collateral Order and Final Order, the following shall constitute "<u>Termination Events</u>":

    (a)    entry of an order converting the Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing or suspending the Chapter 11 cases;

(c) the payment by the Debtors, without the Lender's written consent in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of the calendar week after which this case was filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of, respectively, 125% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter; or

(d) upon notice from the Lender, the Debtors fail to cure within five (5) business days any breach or otherwise fail to abide by any of the terms or provisions of the Interim Cash Collateral Order or Final Order.

31. The Debtors request that the Court find that the foregoing adequate protection to be granted to the Lender is reasonable and sufficient to protect its interests.

## C. **Interim Approval**

32. Bankruptcy Rule 4001(b) governs the procedures for the use of cash collateral, and provides, in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 15 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bank. P. 4001(b)(2).

33. Accordingly, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the interim use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. The Debtors seek entry of the Interim

{33599: 002: 00840698.DOC :3 }

Cash Collateral Order to avoid immediate and irreparable harm to their estates, their assets and their creditors. This relief will enable the Debtors to operate their businesses in the ordinary course and to pay necessary expenses and avoid immediate and irreparable harm to their estates pending a final hearing on the Motion. Pursuant to Bankruptcy Rule 4001, the Court is authorized to grant the relief requested by this Motion.

## COMPLIANCE WITH RULE 4001 AND LOCAL RULE 4001

34. Local Rule 4001 requires the Debtor to (1) recite whether the proposed form of order and/or underlying cash collateral stipulation contains certain provisions; (2) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement; and (3) provide the justification for the inclusion of such provision. A chart addressing the Local Rule 4001 requirements is included below:

| Requisite Provision | Location in DIP Financing Agreement | Justification |
|---|---|---|
| Local Rule 4001(b)(1) – Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors (i.e., clauses that secure pre-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its pre-petition security interest or applicable law). | None | N/A |

| Requisite Provision | Location in DIP Financing Agreement | Justification |
|---|---|---|
| Local Rule 4001(b)(2) -- Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties-in-interest at least 75 days from the entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters | None | N/A |
| Local Rule 4001(b)(3) -- Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c) | None | N/A |
| Local Rule 4001(b)(4) – Provisions that grant immediately to the pre-petition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549 | None | N/A |
| Local Rule 4001(b)(5) – Provisions that deem pre-petition secured debtor to be post-petition debt or that use post-petition loans form a pre-petition secured creditor to pay all or part of that secured creditor's pre-petition debt, other than as provided in 11 U.S.C. § 552(b) | None | N/A |
| Local Rule 4001(b)(6) – Provisions that provide for a substantially smaller or no professional fee carve-out for the professionals retained by a creditor's committee as compared to a professional fee carve-out for the professionals retained by the debtor | None | N/A |
| Local Rule 4001(b)(7) – Provisions that prime any secured lien, without the consent of that lienor | None | N/A |
| Local Rule 4001(b)(8) – Super-priority positions unless a significant carve-out is proposed | None | N/A |

| Requisite Provision | Location in DIP Financing Agreement | Justification |
|---|---|---|
| Local Rule 4001(b)(9) – A secured creditor obtaining a higher administrative expense priority than Chapter 11 expenses of administration of Chapter 7 expenses of administration in the event of a conversion from Chapter 11 | None | N/A |
| Local Rule 4001(b)(10) – Automatic perfection of security interest in "replacement collateral" without filing or re-filing UCC statements | None | N/A |

35. Local Rule 4001 also requires that "Financing Motions" provide a summary of the essential terms of the proposed use of cash collateral and/or financing. Likewise, Bankruptcy Rules 4001(b) and 4001(c) require summaries of the relevant documents of all materials and identification of the location of material provisions. The Debtors assert that they have complied with both Bankruptcy Rule 4001 and Local Rule 4001 by providing the summary above.

## NO PRIOR REQUEST

36. No prior motion for the relief requested herein has been made to this Court in these Chapter 11 cases.

## NOTICE

37. Notice of this Motion has been given to: (a) the Office of the United States Trustee, (b) Premier Bank, the Debtors' prepetition Lender, and its counsel, Alexander R. Domanskis of Boodell & Domanskis, LLC; and (c) the Debtors' ten (10) cumulatively largest unsecured trade creditors. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

{33599: 002: 00840698.DOC :3 }

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Interim Cash Collateral Order; (ii) schedule the Final Hearing; and (iii) grant such other relief as the Court may deem just and appropriate.

Dated: January 3, 2012

Respectfully submitted,

**MICHAEL'S MARKET, INC. AND ITS AFFILIATED DEBTORS**

By: /s/  Forrest B. Lammiman_____
      One of Their Proposed Attorneys

Forrest B. Lammiman
David L. Kane
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)
flammiman@mpslaw.com
dkane@mpslaw.com

{33599: 002: 00840698.DOC :3 }